Lisa Rosano
Rosano Law
825 W 8th Ave, Ste 203
Anchorage, Alaska 99501
Tel. (907) 531-7626
lrosano@rosanoalaska.com
paulam@rosanoalaska.com
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | | |
|---|---|---|
| RACHEAL GERKE, Individually; L.L., by and through his mother and legal guardian, RACHEAL GERKE; N.L., by and through his mother and legal guardian, RACHEAL GERKE, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | Case No. _______________ |

## COMPLAINT FOR DAMAGES

## UNDER THE FEDERAL TORT CLAIMS ACT

COME NOW Plaintiffs, Racheal Gerke, individually, L.L., and N.L., minor children, by and through their mother and legal guardian, Racheal Gerke, said Plaintiffs represented by attorney Lisa Rosano of Rosano Law, and hereby state, claim, plead and allege as follows:

## INTRODUCTION

1. This is an action against the Defendant United States of America under the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq.*) and 28 U.S.C. § 1346(b)(1), for negligence and professional malpractice in connection with medical care provided to Plaintiff L.L. at the Alaska Native Medical Center (hereinafter "ANMC") in Anchorage, Alaska.

2. The Indian Health Service (hereinafter "IHS") is an agency within the Department of Health and Human Services (hereinafter "DHHS") that delivers health care and services to Native Americans and Alaska Native People. The IHS provides comprehensive health service delivery to Alaska Native People through clinics, hospitals, health centers and health stations throughout the country.

3. The ANMC was opened by the IHS in 1997. In 1998, the IHS transferred its statewide services to the Alaska Native Tribal Health Consortium (hereinafter "ANTHC"), and ANTHC assumed responsibility for the operations of the majority of the IHS' programs.

4. Because the IHS is an operating division within the DHHS, any malpractice or injury involving an incident at an IHS or Tribal health care provider or facility implicates the Federal Tort Claims Act such that their employees are deemed employees of the IHS and/or DHHS and any claim as to the conduct of the IHS or Tribal health care provider or facility is a claim against the United States of America.

5. Accordingly, the claims herein are brought against the Defendant United States of America pursuant to the Federal Tort Claims Act (28 U.S.C § 2671, *et seq*.) and 28 U.S.C. § 1346(b)(1), for money damages as compensation for personal injuries caused by the Defendants' negligence.
6. Plaintiffs have fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act, Standard Form 95. Each of the Plaintiffs has filed the Standard Form 95.
7. This suit has been timely filed, in that Plaintiffs timely served their respective notices of claims on the DHHS and the IHS less than two years after receiving L.L.'s diagnosis.
8. Plaintiffs have not received written notice of a final denial of the administrative claim from the agency. More than six months have elapsed since the agency received Plaintiffs' administrative claims. Accordingly, pursuant to 28 U.S.C. § 2675(a), Plaintiffs elect to deem the administrative claim finally denied for purposes of this action. Plaintiffs have elected to file their complaint in the United States District Court pursuant to 28 U.S.C. § 2675(a).
9. These claims are timely filed under 28 U.S.C. § 2401(a)(b) and 28 U.S.C. § 2675(a).

**PARTIES, JURISIDCTION, AND VENUE**

10. Plaintiffs were residents of Anchorage, Alaska at all times relevant to the allegations in this Complaint. They continue to reside in Anchorage, Alaska.

11. ANMC operates in Anchorage, Alaska.

12. L.L. is a minor child. H was treated by ANMC and its providers beginning in infancy. His providers included Drs. Jana Linfield and Dr. Dwight Parker.

13. Racheal Gerke is the mother and legal guardian of L.L.

14. N.L. is a minor child. He is the brother of L.L.

15. Racheal Gerke is the mother and legal guardian of N.L.

16. On information and belief, at the time of the negligent and/or grossly deficient and reckless acts complained of herein, Dr. Jana Linfield was employed by the United States of America as a physician and was acting within the scope and course of her employment with Defendant United States of America such that the United States is liable for her negligent or wrongful acts or omissions.

17. On information and belief, at the time of the negligent and/or grossly deficient and reckless acts complained of herein, Dr. Dwight Parker was employed by the United States of America as a physician and was acting within the scope and course of his employment with Defendant United States of America such that the United States is liable for his negligent or wrongful acts or omissions.

18. Defendant United States of America, including its directors, officers, operators, administrators, employees, agents, and staff at the ANMC at Anchorage, Alaska, are hereinafter collectively referred to as "ANMC" and/or "United States."

19. At all times relevant to this Complaint, ANMC held itself out to the Plaintiffs as a provider of high-quality health care services, with the expertise necessary

to maintain the health and safety of patients like L.L. Racheal Gerke entrusted care of her child to ANMC.

20. Upon information and belief, at all times relevant to this Complaint, Drs. Linfield and Parker, as well as related ANMC directors, officers, operators, administrators, employees, agents, and staff were employed by and/or acting on behalf of the Defendant United States. Furthermore, the Defendant is responsible for the negligent acts of its employees and agents, under respondeat superior and is responsible for hiring, training and supervising said employees and agents.

21. The Defendant United States, including its agents and employees, owed to the Plaintiff L.L., a duty to exercise that degree of skill, judgment, and care expected of a reasonably competent medical practitioner practicing under the same or similar circumstances, which duty included the timely performance of appropriate diagnostic tests and procedures to determine L.L.'s condition; the timely and appropriate diagnosis of such condition; the timely employment of and/or referral for appropriate diagnosis of such condition; the timely employment of and/or referral for appropriate treatment, procedures and/or surgery, to treat such condition, without injury upon the Plaintiff; continuous evaluation of the Plaintiff's condition, and the effects of treatment and the adjustment of the course of treatment in response to such on-going surveillance and evaluation- all of which the Defendant United States failed to do.

22. Defendant was negligent in that, by itself and through its employees and agents, including ANMC, Dr. Jana Linfield and Dr. Dwight Parker, the Defendant failed to employ timely and appropriate diagnostic tests and procedures to evaluate and diagnose L.L. with Hirschsprung disease, failed to employ timely and appropriate treatment, procedures and/or surgery to treat such condition, and was otherwise negligent. As a result of the Defendant's negligence, L.L. suffered a delayed diagnosis of Hirschsprung disease, which resulted in delayed treatment and complications to his health, which complications will affect him throughout his life. Further as a result of the delayed diagnosis and treatment, L.L. endured years of mental and physical distress during the period of time in which he was denied appropriate diagnosis and treatment. L.L.'s family- mother Racheal Gerke and brother N.L., also suffered distress and impacts to their loving relationship with L.L. as a result of at witnessing his deteriorating health and wellbeing and suffering the impacts to their loving relationship with L.L. They continue to suffer distress and impacts to their loving relationship with L.L. due to his complicated health condition and the strain it puts on their family.

23. By filing this Complaint, it is the Plaintiffs' intent to provide Defendant notice, and to seek recovery from Defendant for all of Defendant's culpable conduct based upon all relevant causes of action as applicable under state and federal law, including all statutory, constitutional, and common law.

24. Jurisdiction is proper under 28 U.S.C. § 1346(b)(1).

25. Venue is proper under 28 U.S.C. § 1402(b) in that all of the acts and omissions forming the basis of these claims occurred in the District of Alaska.

**FACTUAL ALLEGATIONS**

26. L.L. was born on May 19, 2018. Following his birth, L.L. was a patient at ANMC. He was treated by Dr. Jana Linfield and also Dr. Dwight Parker as well as other ANMC providers.

27. Beginning when L.L. was about 2 months old, L.L.'s mother, Racheal Gerke, reported to his providers at ANMC that her son experienced chronic constipation and related issues with bowel movements, including hard stools. Ms. Gerke made repeated reports of the symptoms. The child's condition was chronic. The child's physicians, initially Dr. Linfield, and then Dr. Parker, did not take seriously Ms. Gerke's concerns, and did not assess the child as they should have done. Appropriate examination of the child given reports of chronic constipation would have revealed the need for further diagnostic testing to determine origin of the symptoms. Appropriate testing would have revealed that the child had Hirschsprung disease. The treating providers however, failed to take seriously Ms. Gerke's repeated reports of chronic constipation in her infant son. They failed to evaluate the child's continuing symptoms even though the symptoms were unchanged over time and caused the child to suffer constant distress, impacts to diet and nutrition and quality

of life, as well as development, during infancy. Their conduct was below the standard of care.

28. During the first year of the child's life, when the child was generally seen by Dr. Linfield, Ms. Gerke repeatedly reported her concerns and observations. Dr. Linfield dismissed Ms. Gerke's reports. Given that the child was an infant, and the symptoms were continuous, with associated impacts to the child's quality of life and development and risks to health, Dr. Linfield should have evaluated the child, conducted diagnostic testing and/or referred the child for diagnostic testing, to assess for the origin of the symptoms and to treat the child. The symptoms presented by L.L. were consistent with Hirschsprung disease. Diagnostic testing of the child would have led to such diagnosis. However, Dr. Linfield failed to do so. Dr. Linfield's conduct was below the standard of care.

29. The child was seen also by Dr. Parker. He, too, dismissed Ms. Gerke's concerns and the child's symptoms. Though L.L. exhibited chronic constipation, including, for instance, per one report, going 13 days without a bowel movement, Dr. Parker considered the issue "moderate." He did not refer the child for diagnostic testing to evaluate the origin of the health concern. By the time the child was treating with Dr. Parker, his condition had been ongoing for approximately 1 year. Yet, Dr. Parker did not act. Dr. Parker's treatment was below the standard of care.

30. As a result of the lack of timely diagnosis and treatment, L.L. suffered lethargy. When Ms. Gerke transitioned him to solid foods, he wasn't able to tolerate solid foods. He ate pureed foods. He was resistant to eating food, likely due to the pain of constipation. His mother put him on high fiber foods to encourage bowel movements. He endured laxatives, enemas, probiotics, all without improvement.

31. Prior to Dr. Parker treating L.L., another physician at ANMC, Dr. John Boyd, evaluated the child, and considered the possibility of Hirschsprung disease. Dr. Boyd recommended exploring the origin of the symptoms. However, he unfortunately retired. Care transferred to Dr. Parker. Dr. Parker was on notice of the medical records by the prior provider. He should have followed upon the concerns expressed by Dr. Boyd and recommendations for diagnosis, including as to possible Hirschsprung disease. Dr. Parker should have rendered care consistent with recommendations for evaluation. He did not take such action. This was below the standard of care.

32. Ms. Gerke finally prevailed on Dr. Parker to refer the child for diagnostic testing, to determine what was causing the symptoms, and for treatment. Her efforts are what motivated the provider to take any action at all.

33. The child was seen at Providence Alaska Medical Center for evaluation. Following evaluation, referral was made for biopsy. That occurred at ANMC.

34. On June 16, 2022, ANMC contacted Racheal Gerke and informed her that L.L. had Hirschsprung disease.

35. On June 22, 2022, L.L. underwent laparoscopic assisted leveling colostomy and three additional colon biopsies. The colostomy created a stoma in L.L.'s abdomen, connected to his colon, to allow for the attachment of a colostomy bag.

36. On June 24, 2022, L.L. underwent emergency surgery due to a complication resulting from his colostomy.

37. On September 16, 2022, L.L. underwent surgery for a laparoscopic assisted colostomy take down and pull through, a procedure that removed a portion of L.L.'s diseased colon and reconnected the healthy portions of his colon together.

38. On November 3, 2022, L.L. underwent surgery for another colostomy, due to ongoing complications with the prior stoma.

39. On May 2, 2023, L.L. endured a renal biopsy to determine if there were additional diseased portions of his colon.

40. On March 11, 2024, L.L. underwent surgery to redo his anorectal pull through, to undergo an ileostomy, and for a colostomy closure. The ileostomy created a separate opening in L.L.'s abdomen connected to his ileum (a portion of his small intestine). A separate ileostomy bag was attached to help L.L. dispose of waste. He was discharged on March 15, 2024.

41. On May 29, 2024, L.L. underwent surgery for an ileostomy closure.

42. These surgeries were traumatic to L.L. Racheal Gerke and N.L. suffered trauma as well, witnessing L.L. suffer surgery after surgery.

43. L.L. endured complications as a result of the delayed diagnosis. He suffered delayed physical and mental and social development due to the delayed diagnosis. He had to endure numerous surgeries. He now lacks control of his bowel. He has suffered trauma. He has suffered shame in school. He continues to endure and will endure, throughout his life, health complications as a result of the delayed diagnosis.

44. Had the providers taken seriously Ms. Gerke's reports, and properly evaluated L.L., monitored L.L., diagnosed L.L., referred L.L. for diagnosis, and treated L.L., he would not have had to endure untreated Hirschsprung disease and the complications to his health. Interventions could have been started earlier. Instead, L.L suffers and will suffer throughout his life, long-term health complications as a result of the delayed diagnosis and treatment.

45. L.L. has suffered and continues to suffer, and will suffer throughout his life, impacts to his emotional well-being and quality of life, as a result of the delayed diagnosis and complications it caused. He has suffered extraordinary trauma since he was an infant, and still now, as a child, suffers trauma as a result of the delayed diagnosis and impacts to his health. He will suffer trauma throughout his life. L.L. will also suffer impacts to his education and employment prospects and earning potential. He will also have lifelong health and care costs associated with his condition.

46. Racheal Gerke has suffered trauma and emotional distress from witnessing her son endure numerous surgeries and complications to his health. Ms. Gerke has suffered impacts to her loving relationship with L.L.

47. N.L has suffered trauma and emotional distress from witnessing his brother endure numerous surgeries and complications to his health. N.L. has suffered impacts to his loving relationship with L.L.

48. The United States, by and through its agents and employees, breached the standard of care by, *inter alia,* negligently and carelessly:

   a. Failing to timely diagnose and treat L.L.'s Hirschsprung disease;

   b. Failing to timely and appropriately order and obtain diagnostic tests in light of L.L.'s symptoms, which were consistent and unabated, despite interventions;

   c. Failing to appreciate the seriousness of L.L.'s symptoms;

   d. Failing to provide timely and appropriate follow up;

   e. Failing to timely and appropriately examine L.L.;

   f. Failing to timely and appropriate obtain, interpret, and act upon L.L.'s medical history findings;

   g. Failing to timely and appropriately assess L.L.;

   h. Failing to timely and appropriate obtain consultation and/or interventions from other health care providers;

   i. Failing to make timely and appropriate referrals for diagnosis, care and treatment;

j. Failing to take timely and appropriate steps to protect the health and well-being of L.L.

49. As a direct and proximate result of the aforesaid negligence of the Defendant, Plaintiff L.L. suffered serious impacts to his health and body from untreated and undiagnosed Hirschsprung disease. He will endure complications to his health through his life. He and/or his family, have incurred and will incur medical and related treatment and care costs which would otherwise not been needed. L.L. has suffered and will suffer in the future, pain, suffering, disability, mental anguish, distress, anxiety, fear, shame, loss of enjoyment of life, loss of education and earning potential, shame, and other damages, all of which are permanent. Racheal Gerke and N.L. have suffered emotional distress and loss of consortium.

## CAUSES OF ACTION

## COUNT 1 – MEDICAL MALPRACTICE NEGLIGENCE

50. Plaintiffs reallege and reincorporate each and every allegation above as if fully set forth herein.

51. The Defendant and its medical providers employees, agents, and/or staff had a duty to provide medical services to L.L. that met the standard of care, and to exercise that standard and degree of care and skill required of health care providers, consistent with the expertise Defendant owed its patients, including L.L.

52. The Defendant and its agents breached the duty of care to L.L by failing to timely diagnose and/or treat his condition.

53. At all times relevant to this Complaint, the Defendant and its agents had a duty to hire and train and supervise competent medical providers, employees, agents and/or staff in order to meet its standards of quality of care of its patients, including L.L. The Defendant knew, or should have known, that the medical providers, employees, agents and/or staff of ANMC were not properly trained, and/or supervised, in a manner necessary to provide a level of care for L.L. that met all applicable legal requirements, that demonstrated the standard and degree of care and skill required of competent health care providers, and was consistent with the expertise the Defendant represented it had.

54. The Defendant breached its duty by negligently hiring incapable and/or inexperienced and/or unqualified medical providers, employees, agents and/or staff.

55. The Defendant had a duty to retain only competent and adequately trained medical providers, employees, agents and/or staff in order to meet its standards of quality of care of its patients, including L.L.

56. The Defendant breached its duty by negligently retaining incapable and/or inexperienced and/or unqualified medical providers, employees, agents and/or staff.

57. As a direct and proximate result of the Defendant's negligence, L.L. sustained serious and permanent injuries; L.L.'s mother, on behalf of him, incurred medical expenses and/or other damages, and both L.L. and/or his mother, will continue to incur medical expenses and/or other damages in the future. L.L. endured pain, suffering, and mental anguish, and will continue to endure pain, suffering, and mental anguish in the future. L.L. has suffered a loss of the enjoyment of life and will continue to suffer a loss of the enjoyment of life in the future. L.L. will suffer impacts to education and earning potential. Additionally, as a direct and proximate result of the culpable conduct, the Plaintiffs, Racheal Gerke, and N.L. suffered injury, including emotional distress and loss of consortium.

58. The acts and/or omissions set forth above would constitute a claim under the law of the State of Alaska.

59. The Defendant is liable pursuant to 28 U.S.C. § 1346(b)(1).

**COUNT 2 – VICARIOUS LIABILITY, RESPONDEAT SUPERIOR, APPARENT AGENCY AND/OR AGENCY**

60. Plaintiffs reallege and reincorporate each and every allegation above as if fully set forth herein.

61. At all times relevant to this case, the medical providers, employees, agents and/or staff of ANMC acted within their respective capacities and scopes of employment for the Defendant.

62. The medical providers, employees, agents and/or staff of ANMC and staff negligently and/or recklessly, directly and proximately caused personal injury to L.L., including both acts of omission and acts of commission.

63. As a direct and proximate result of the Defendant's negligence, L.L. sustained serious and permanent injuries; L.L.'s mother, on behalf of him, incurred medical expenses and/or other damages, and both L.L. and/or his mother, will continue to incur medical expenses and/or other damages in the future. L.L. endured pain, suffering, and mental anguish, and will continue to endure pain, suffering, and mental anguish in the future. L.L. has suffered a loss of the enjoyment of life and will continue to suffer a loss of the enjoyment of life in the future. L.L. will suffer impacts to education and earning potential. Additionally, as a direct and proximate result of the culpable conduct, the Plaintiffs, Racheal Gerke, and N.L. suffered injury, including emotional distress and loss of consortium.

64. The acts and/or omissions set forth above would constitute a claim under the law of the State of Alaska.

65. The Defendant is liable pursuant to 28 U.S.C. § 1346(b)(1).

**COUNT 3 – NEGLIGENT HIRE/SUPERVISION/TRAINING**

66. Plaintiffs reallege and reincorporates each and every allegation above as if fully set forth herein.

67. Defendant owed L.L. the duty to exercise reasonable care to employ, supervise, control and retain competent and careful medical providers, employees, agents and/or staff to provide adequate and competent medical care to L.L.

68. The Defendant failed to exercise reasonable care in supervising and training its medical providers, employees, agents and/or staff.

69. As a direct and proximate result of the Defendant's negligence, L.L. sustained serious and permanent injuries; L.L.'s mother, on behalf of him, incurred medical expenses and/or other damages, and both L.L. and/or his mother, will continue to incur medical expenses and/or other damages in the future. L.L. endured pain, suffering, and mental anguish, and will continue to endure pain, suffering, and mental anguish in the future. L.L. has suffered a loss of the enjoyment of life and will continue to suffer a loss of the enjoyment of life in the future. L.L. will suffer impacts to education and earning potential. Additionally, as a direct and proximate result of the culpable conduct, the Plaintiffs, Racheal Gerke, and N.L. suffered injury, including emotional distress and loss of consortium.

**COUNT 4 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

70. Plaintiffs reallege and reincorporate each and every allegation above as if fully set forth herein.

71. Defendant negligently breached its duty to L.L., Racheal Gerke, and N.L. to provide L.L. adequate medical services and properly diagnose L.L. for timely treatment.

72. The negligent and/or reckless actions of the Defendant and their medical providers, employees, agents and/or staff caused foreseeable physical injury and severe emotional distress to Plaintiff L.L., his mother Racheal Gerke, and his brother N.L., and they continue to suffer from the same.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief:

1. Compensatory damages on behalf of Plaintiff L.L. in the amount of $5,000,000.
2. Compensatory damages on behalf of Racheal Gerke in the amount of $1,000,000
3. Compensatory damages on behalf of N.L. in the amount of $500,000.
4. To the extent applicable, pre- and/or post-judgment interest in the maximum amount allowed by law.
5. Costs and attorney's fees incurred in this action, together with such further and additional relied at law or in equity that this Court may deem proper.

Respectfully submitted this 8th day of October, 2026.

ROSANO LAW
Attorney for Plaintiffs

By: *Lisa Rosano*
Lisa Rosano, ABA 0511110